## BAMBER vs. SAVAGE.

*March 26 — April 19, 1881.*

*Auction sale of real property — Statute of Frauds.*

Soon after real property of the plaintiff had been bid off by defendant at an auction sale, defendant orally agreed with plaintiff to pay a certain part of the price the next day, and the remainder a few days later. Soon after the sale, also, plaintiff's agent requested defendant to make a deposit with him, for the plaintiff, of some portion of the purchase money; and, upon defendant's excusing herself from so doing, and

Bamber vs. Savage.

promising to make it all right with plaintiff, he drew up a memorandum of the sale, and signed it for plaintiff; but this was never delivered to, or accepted or assented to by, defendant. No other memorandum of the sale was made, by the auctioneer or any other person. *Held*, that the sale was invalid, under the statute. R. S., sec. 2304.

APPEAL from the County Court of *Milwaukee* County.

Action to recover damages for defendant's refusal to accept a conveyance of, and pay for, land struck off to her, upon her bid, at a public auction sale. The complaint alleges that immediately after said sale, and in consideration thereof, defendant promised to pay plaintiff $1,000 on the next day, and the balance of said bid (which balance was $1,750) on or before the 1st of May, 1880; and that a memorandum in writing of the sale was made at the time thereof by John M. Connolly, plaintiff's duly authorized agent, in accordance with the statute.

The facts shown by the evidence will sufficiently appear from the opinion.

The cause was tried by the court without a jury, and the substance of the findings of fact was, that there had never been any contract of sale between the parties. From a judgment in favor of the defendant, the plaintiff appealed.

For the appellant there was a brief by *J. M. Connolly*, his attorney, with *Murphey & Goodwin*, of counsel, and oral argument by *Mr. Connolly*.

*Wilson Graham*, for the respondent.

COLE, C. J. It is perfectly evident to us that in this case there was no sufficient memorandum of the sale made, to take the case out of the statute. The statute makes every contract for the sale of lands, or of any interest therein, void, unless the contract, or some note or memorandum thereof expressing the consideration, be in writing, and be subscribed by the party by whom the sale is made, or by his lawfully authorized agent. Section 2304, R. S. The learned county court found,

upon the evidence, that the lot was offered for sale, and was sold at auction by Dixon, as auctioneer, who was duly authorized by the plaintiff to make the sale. There was evidence undoubtedly to support this finding, and we think it was according to the facts proven. It does not appear whether Dixon was a professional auctioneer or not. Certain it is that he made no memorandum of the sale. Whatever memorandum thereof was made appears to have been made by Mr. Connolly, who was employed by the plaintiff to sell the lot, and who subscribed the memorandum as the attorney and agent of the plaintiff.

The circumstances attending the sale and the making of this memorandum are in brief these: The property was sold on the 16th day of February, 1880, by Dixon, acting as auctioneer, who struck it off to the defendant for $2,750, she being the highest bidder. Soon after the sale, in a conversation had between the plaintiff and the defendant, the latter verbally agreed to pay $1,000 the next day, and the balance of the purchase money before the plaintiff moved to Dakota, which he expected to do about the first of March following. Mr. Connolly states in his testimony that immediately after the sale he saw the defendant and asked her to make a deposit (it being understood that he was to receive the deposit as agent of the plaintiff and retain it until the sale was finally consummated), and the defendant made answer that she had no money with her, but she would make it all right with the plaintiff and wife, as they were old friends. He then drew up the memorandum in question. But it is clearly proven that this memorandum was never delivered to, nor accepted or assented to by, the defendant. Indeed it does not appear that the defendant ever knew of its existence until the time of the trial. It is not pretended that Connolly was acting as agent for the defendant, or had any authority to make the purchase for her. He was acting solely and exclusively as the agent of the plaintiff in whatever he said and did in the matter. This

being so, upon what principle can it be claimed that the defendant is bound by the contract, and must make good the difference between the price which she agreed to pay for the property and the price at which it was subsequently sold to Eaves?

Where a memorandum containing all the essentials of the contract for the sale of land is made and signed at the time of the sale, by the auctioneer who sold it for the owner, it is well settled in law that this is sufficient to take the case out of the statute. The auctioneer is deemed to be the agent for both parties at a public sale for the purpose of signing the contract. Benj. on Sales, § 268; *Tallman v. Franklin*, 14 N. Y., 584. But "it has been decided that the memorandum of the auctioneer, to bind the *purchaser*, must be *contemporaneous* with the sale. It cannot be made afterwards." STORY, J., in *Smith v. Arnold*, 5 Mason, 414–419. See also *Gill v. Bickwell*, 2 Cush., 355; *Horton v. McCarty*, 53 Me., 394. In this case, as we have said, the auctioneer made no memorandum. The person who did make it was Mr. Connolly, who was acting exclusively as the agent of the plaintiff in the transaction. He had no authority to act for the defendant, and did not assume to act for her, in making the contract. And it seems to us it would be an extraordinary position to hold that he, acting as agent of the vendor after the sale was made by the auctioneer, could draw up a memorandum of the contract, sign it on behalf of his principal, and bind the vendee, who never saw it or assented to its terms. If this memorandum is binding upon the defendant, who never saw it, it would follow that parol evidence would not be admissible to show that it was incorrect; and this, too, though made by a party in interest. We know of no case which affirms any such doctrine. It is worthy of remark that the memorandum does not include the terms of sale as set forth in the complaint or proven on the trial. By the memorandum it would be implied that the consideration money was to be paid by the bidder on

the execution of a deed conveying a good title. But the complaint alleges, in substance, that the defendant agreed to pay $1,000 on the next day after the sale, and the balance of the bid on or before the first day of March, 1880. The plaintiff testified that the defendant agreed to pay $1,000 the next day after the sale, and the balance before he should go to Dakota. Now the doctrine contended for by plaintiff's counsel leads to this result: that he, as agent of the vendor, could draw up and subscribe the memorandum for his principal, settle the terms of an important contract, and bind the defendant, when she never saw the memorandum, and, of course, never assented to it. It needs no argument to show the unsoundness of such a position. There are cases which hold that where a contract for the sale of land has been signed by the vendor, and delivered to and accepted by the vendee, the latter is bound by its terms though he never executed it. *Vilas v. Dickinson,* 13 Wis., 488; *Lowber v. Connit,* 36 Wis., 177; *Hutchinson v. C. & N. W. Railway Co.,* 37 Wis., 582. But the doctrine of those cases does not aid the plaintiff, because here there was no acceptance of or even assent to the terms of the memorandum, on the part of the defendant. And, in any view which we have been able to take of the case, we think the judgment of the county court is correct and must be affirmed.

*By the Court.* — Judgment affirmed.